{¶ 44} I respectfully dissent. The facts are compelling. A child's life is at stake. And emotions, by definition, are running high. There are few, if any, more compelling legal issues to be resolved than the question of terminating parental rights in the case of a child rape. Clearly, a parent who would rape any child, let alone their own, has chosen to relinquish their right to have any further contact with that child. However, that is not to say that courts, in such a high-stakes case, are relieved of their statutory responsibility to do their job cautiously and thoroughly. The outcome, in terms of a child's life, requires nothing less.
 {¶ 45} At the critical adjudicatory hearing of January 17, 2002, appellant was not present; he was not represented by counsel; the court took no testimony; and no exhibits or transcripts from the hearing have been presented to this court for review. There is a reference to "Exhibit 1" in the entry, but no such exhibit is in the record. In short, there is a declaration that the children were neglected and abused, and literally no evidence to support that conclusion. From that date forward, the record is awash with references to the "rape" of a child, yet, incredibly, there is no competent evidence to support the charge. How, therefore, is this court to affirm such a holding?
 {¶ 46} As stated by this court on numerous occasions, in parental termination proceedings, "the provisions of R.C. 2151.414(D) are mandatory, and must be scrupulously observed."[4]
 {¶ 47} As stated by the Sixth Appellate District:
 {¶ 48} "On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard.[5] The `clear and convincing evidence' standard is a higher degree of proof than the `preponderance of the evidence' standard generally utilized in civil cases but is less stringent than the `beyond a reasonable doubt' standard used in criminal cases.[6] An appellate court will not substitute its own judgment for that of a trial court applying a `clear and convincing evidence' standard where some competent and credible evidence supportsthe trial court's factual findings."[7][8]
 {¶ 49} In the instant matter, there is no evidence to review as a basis for the critical findings by the trial court. Therefore, it is with reluctance that I would hold, as a matter of law, it is not possible for this court to affirm that holding.
 {¶ 50} In these matters, the standard of review was most clearly stated by the Supreme Court of Ohio in In re Adoption of Holcomb, where the court held:
 {¶ 51} "We are compelled to add a final note regarding the presentation of evidence and the standard of proof which must be satisfied thereby. This necessarily impacts upon both the trial court's assessment of the evidence and the applicable standard of review. Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear andconvincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication.[9] * * * Furthermore, we emphasize that these allegations must be proven by clear and convincing evidence, which requires that the proof `* * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'[10] To preclude the possibility of confusion, we reiterate that issues regarding failure of communication and lack of justifiable cause are questions of fact for the probate court. Once the clear and convincing standard has been met to the satisfaction of the probate court, the reviewing court must examine the record and determineif the trier of fact had sufficient evidence before it to satisfy thisburden of proof.[11] The determination of the probate court should not be overturned unless it is unsupported by clear and convincing evidence."[12]
 {¶ 52} It is clear in this matter that the evidentiary standard required by the Supreme Court of Ohio has not been met.
 {¶ 53} In conclusion, I feel further compelled to comment on the matrix that has been created by the Ohio General Assembly in these cases involving the termination of parental rights. I commend the trial court and its magistrate for wading through the myriad of findings required in this matter, but remain troubled particularly by the statutory emphasis placed upon the fact the natural father was "incarcerated" for a crime relating to the child. Obviously the term "incarcerated" has now taken on new meaning, as courts attempt to discern the legislature's intent in drafting R.C. 2151.414(E)(5). Has the term "incarcerated" now become synonymous with "convicted"? The due process implications of such a holding clearly demonstrate a fundamental weakness with this law.
 {¶ 54} If this father has raped his daughter; has been convicted of that crime; and based upon that conviction loses his parental rights, then, clearly, justice has been done herein. The record before this court, however, answers none of those questions.
[4] In re Hommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at *4.
[5] In re Wise (1994), 96 Ohio App.3d 619, 626.
[6] State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
[7] Id.; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus.
[8] (Emphasis added.) In re Andrew B., 6th Dist. No. L-01-1440, 2002-Ohio-3977, at ¶ 53.
[9] In re Adoption of Anthony (1982), 5 Ohio App.3d 60; In reAdoption of Hupp (1982), 9 Ohio App.3d 128; cf. R.C. 2151.35.
[10] Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
[11] Id.
[12] (Italicized emphasis in original, bolded emphasis added.)In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.